UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MALCOLM HENSLEY, Guardian
Ad Litem for JOSHUA HENSLEY,

                Plaintiff,

    v.

HANEY-TURNER, LLC, RUSS
BROTHERS, INC., TAGHRID
MUHAREB and SHAFIG MUHAREB,
dba THE WAFFLE SHOP,

                Defendants.

NO. CIV. S-01-2212 FCD DAD

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on defendant Haney-Turner, LLC's ("Haney-Turner") motion to enforce settlement agreement and for attorney fees and costs incurred in pursuing the motion.[1]  By the motion, Haney-Turner seeks to compel co-defendants Taghrid and Shafig Muhareb, dba The Waffle Shop (collectively, the "Muharebs"), to comply with the terms of the settlement agreement and release entered into by defendants with plaintiff Malcolm

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. See E.D. Cal. Local Rule 78-230(h).

1

Hensley ("plaintiff") in the above entitled matter (the "Settlement Agreement").[2]

For the reasons set forth below, the court GRANTS Haney-Turner's motion; the Muharebs are directed to complete the modifications to the subject premises as provided in the Settlement Agreement no later than 90 days from the date of this order. The court awards Haney-Turner, as the prevailing party on the motion, $8,414.77 in attorney fees and costs.

## BACKGROUND

On December 3, 2001, plaintiff brought a claim under the Americans with Disabilities Act ("ADA") against defendants, alleging various accessibility violations at the Muharebs' The Waffle Shop, located in Yuba City, California. The Muharebs leased the restaurant facility (sometimes herein, the "Premises") from Haney-Turner. In May 2004, plaintiff entered a Settlement Agreement with defendants, pursuant to which defendants paid plaintiff $35,000.00 and the Muharebs agreed to perform certain modifications to the property. (Turner Decl., filed July 17, 2006, Ex. A.) As to the required modifications, the Agreement provided:

> Defendants Taghrid and Shafig Muhareb, individually and dba The Waffle Shop will undertake all of the modifications to the property as described in the report and plans dated December 16, 2002, prepared by expert George Dedekian, with no cap on the amount of monies spent and with all modifications to be

---

[2] With its reply, Haney-Turner also moves to strike the Declarations of Shafig Muhareb and Alice Chavez filed in support of the opposition. (Objs. & Mtn. to Strike, filed Sept. 22, 2006.) The court DENIES the motion. The declarations provide facts concerning the events that transpired after the litigation ended, and those facts are important to the court's general understanding of the issues.

2

>completed within six months of the date of the execution of this Agreement.  Defendants Taghrid and Shafig Muhareb will obtain the appropriate building permits from the appropriate local authority within one week of the execution of this Agreement, and will commence work on the property within two weeks of the execution of this Agreement. Upon completion of the work by Defendants Taghrid and Shafig Muhareb, they will notify Mark Turner of Haney-Turner LLC, in writing, that the work has been completed, and Mr. Turner will be given the opportunity to inspect the property to confirm that the work has been completed as called out in the report and plans prepared by expert George Dedekian as referenced above.

(Id. at Ex. A, ¶ 7(c) at 3.)

The Muharebs concede they have not completed the required modifications.  Specifically, they admit that the handrails, pressure doors and ramp repairs have not been completed.  (Opp'n, filed Sept. 12, 2006, at 3.)  They explain, in response to the motion, that much of the work was delayed due to circumstances beyond their control (*i.e.*, permitting requirements by the city which dictated plan revisions).[3]  Ultimately, the Muharebs state that they did not complete the work because they were evicted from the Premises.  They maintain that the eviction excused their further performance under the Agreement.

In January 2004, the Muharebs were served with a "Thirty-Day Notice to Perform Covenant of Lease or Quit" for failure to provide satisfactory proof of insurance as required by the lease.

---

[3] For purposes of this motion, the court does not need to resolve the parties' dispute over the reasons why the work was not completed by the deadlines provided in the Agreement.  (See Chavez Decl. and Shafig Muhareb Decl., filed Sept. 12, 2006, and Turner Decls., filed Sept. 22, 2006.)  What is relevant to this motion is that the parties agree further work is due under the terms of the Agreement; it for this court to determine whether the Muharebs are required to perform it.

3

1  (RJN, filed Sept. 22, 2006, Ex. B.)  The Muharebs remained in
2  possession of the property following expiration of the 30 days
3  without providing adequate proof of insurance as requested. (Id.
4  at Ex. D.)  In July 2004, a "Ten-Day Notice to Perform Covenant
5  of Lease or Quit" was served on the Muharebs.  (Id. at Ex. C.)
6  The Ten-Day Notice again requested satisfactory proof of
7  insurance according to the lease.  (Id.)  None was provided.
8  (Id. at Ex. D.)

9  Thereafter, on September 21, 2004, Haney-Turner filed an
10 unlawful detainer action against the Muharebs.  (Id. at Ex. A.)
11 Subsequently, Haney-Turner filed a motion for summary judgment on
12 the grounds that the Muharebs were in violation of multiple
13 portions of the lease, including, among other things, by failing
14 to provide satisfactory proof of insurance and by failing to
15 comply with the ADA resulting in a complaint being filed against
16 Haney-Turner and the Muharebs by plaintiff Hensley.  (Id. at Ex.
17 F.)  The motion was granted. (Id.)  A Notice to Vacate ordered
18 that the Muharebs were required to vacate and deliver the
19 Premises to Haney-Turner on or before July 7, 2005.  (Chavez
20 Decl., filed Sept. 12, 2006, Ex. J.)

21 With respect to the relationship between Haney-Turner and
22 the Muharebs, the Settlement Agreement provided:

> [Haney-Turner] and [the Muharebs], individually and
> dba The Waffle Shop, do not waive any rights they
> have against each other, including breach of contract
> claims, eviction claims, and/or other claims that
> arose before or after the execution of this Agreement
> that are related to the lease agreement that [Haney-
> Turner] and [the Muharebs] have with each other.

27 (Turner Decl., Ex. A, ¶ 5 at 3.)

4

**STANDARD**

Pursuant to the parties' Stipulation for Dismissal, filed June 16, 2004, following execution of the Settlement Agreement, the court retained jurisdiction "over all disputes between (among) the parties arising out of the settlement agreement, including but not limited to interpretation and enforcement of the terms of the settlement agreement." (Docket #41.) As such, the court has proper jurisdiction over this matter.

**ANALYSIS**

**1.   Enforcement of the Settlement Agreement**

The Muharebs do not dispute that under the terms of the Settlement Agreement, *they* were obligated to perform the requisite modifications to the Premises. Indeed, the Muharebs completed *some* of the necessary work. Although, with respect to the remaining work, they now maintain that they are not obligated to perform the work due to their eviction from the property.

Their argument is unavailing for several reasons. First, the Settlement Agreement does not condition the Muharebs' performance on their possession of the property. (Turner Decl., Ex. A, ¶ 7(c) [the Muharebs "will undertake all the modifications to the property as described in the report and plans dated December 16, 2002, prepared by expert George Dedekian, with no cap on the amount of monies spent and with all modifications to be completed within six months of the date of the execution of this Agreement."]) Where the language of a contract is clear and explicit, it must govern the contract's interpretation. City of El Cajon v. El Cajon Police Officers' Ass'n, 49 Cal. App. 4th 64, 71 (1996). Here, the terms of the Settlement Agreement are

1 clear, comprehensible and unambiguous.  The Muharebs have not
2 cited any provision of the contract that supports their argument,
3 nor have they identified any ambiguity in the contract's terms.

4 Stating their argument another way, the Muharebs next
5 contend that under the doctrine of frustration of purpose their
6 further performance under the Settlement Agreement is excused.
7 For the doctrine to be applicable, the Muharebs must establish
8 that (1) the parties' principal purpose in entering the contract
9 is substantially frustrated, Cutter Laboratories, Inc. v.
10 Twining, 221 Cal. App. 2d 302, 314-15 (1963); (2) without fault
11 of their own, Dorn v. Goetz, 85 Cal. App. 2d 407, 411 (1948); and
12 (3) by the occurrence of an event, the non-occurrence of which
13 was a basic assumption on which the contract was made, Peoplesoft
14 U.S.A., Inc. v. Softeck, Inc., 227 F. Supp. 2d 1116, 1119 (N.D.
15 Cal. 2002).

16 The Muharebs have not established these elements because (1)
17 the purpose of the Settlement Agreement was to settle liability
18 owed to plaintiff; (2) the Muharebs' eviction was foreseeable;
19 and (3) the Muharebs were the cause of the eviction.  Contrary to
20 the Muharebs' protestations, the purpose of the Settlement
21 Agreement was clearly to settle plaintiff's ADA claims against
22 defendants, not to allow the Muharebs to remain on the property
23 so long as they made the necessary modifications.  The Settlement
24 Agreement provided that the purpose of the Agreement is to
25 "formalize termination of the Action and to settle, resolve,
26 satisfy, and discharge as to all Parties hereto the Released
27 Matters as defined in paragraph 4 . . . ."  (Turner Decl., Ex. A,
28 at Recitals, ¶ B.)  Paragraph 4 provided:

6

> The Parties hereby release and forever discharge each of the other Parties hereto, . . . which are based on facts or occurrences which are alleged in [Plaintiff's] Complaint or which are based on the filing, prosecution or defense of the Complaint or based on any statement, representation, or admission made in connection with the prosecution or defense of the action.

(Id. at ¶ 4.)  Thus, the Muharebs do not correctly state the contract's purpose, and that purpose, the settlement of plaintiff's liability claims, is not frustrated by the Muharebs' eventual eviction from the property.

In similar regard, the Muharebs cannot demonstrate that their subsequent eviction was the "occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made."  "'It is [well] settled that if parties have contracted with reference [to the frustrating event] or have contemplated the risks arising from it, they may not invoke the doctrine of frustration to escape their obligations.'"  Glenn R. Sewell Sheet Metal, Inc. v. Loverde, 70 Cal. 2d 666, 676 (1969) (citation omitted).  The Settlement Agreement makes clear that the parties were aware of the lease between Haney-Turner and the Muharebs and contemplated potential claims by these defendants against one another.  The Agreement stated:

> [Haney-Turney] and [the Muharebs] individually and dba The Waffle Shop, do not waive any rights they have against each other, including breach of contract claims, *eviction claims*, and/or other claims that arose before or after the execution of this Agreement that are related to the lease agreement that [Haney-Turner] and [the Murharebs] dba Waffle Shop have with each other.

(Turner Decl., Ex. A, ¶ 5 at 3) (emphasis added.)  In fact, at the time they entered the Agreement, the Muharebs must have been well aware of their potential eviction as they were served with

7

the Thirty-Day Notice to Perform Covenant of Lease or Quit in *January 2004*, three months *prior* to the execution of the Settlement Agreement.  Thus, the Muharebs cannot demonstrate that their eviction was not contemplated or foreseeable at the time they entered into the Agreement.

Finally, the doctrine of frustration of purpose is further made inapplicable here as the Muharebs' caused their eviction. The Muharebs' lost the unlawful detainer action and were ordered to vacate the premises by the Sutter County Superior Court on July 7, 2005.  Thus, based on their own conduct in failing to comply with the terms of the lease, the Muharebs were evicted from the property.  As such, in failing to meet any of the required elements for application of the doctrine of frustration of purpose, the Muharebs cannot invoke the doctrine to excuse their further performance under the contract.

Accordingly, having conceded that further work is due under the Settlement Agreement, the Muharebs are ordered to complete the requisite work.[4]  In completing the work, the Muharebs shall review Exhibit B to the declaration of George Dedekian ("Dedekian"), filed July 17, 2006.  As set forth in the Settlement Agreement (¶ 7(c)), Dedekian prepared plans for the modifications to the Premises so as to ensure compliance with the

---

[4] While Haney-Turner does not seek herein relief for the Muharebs' untimely completion of the repairs, the court notes that the Muharebs had a year, prior to their eviction, to complete the modifications.  The Agreement required the work to be completed within six months of the execution of the Agreement in May 2004, and even assuming the truth of the Muharebs' explanations for certain delays due to permitting and plan requirements, they have wholly failed to explain why the totality of the work could not be completed prior to their eviction in *July 2005.*

8

ADA. (Dedekian Decl., ¶ 1.)  In February 2006, Haney-Turner contacted Dedekian to evaluate the extent to which the modifications had been completed.  In March 2006, he conducted a site survey of the Premises.  In his opinion, "there remains extensive modifications to be completed and/or corrected in order for the Property to be in compliance with the [original] Plans." (Id. at ¶ 2.)  Exhibit B to his declaration is a report of the modifications that, in his opinion, remain to be completed and corrected under the original plans.  (Id. at Ex. B.)  Based upon the record before it, the court is not capable of resolving the parties' dispute over what specific work is required to be performed to bring the Premises into compliance with the original plans.  However, the court retains jurisdiction over this matter, and the Muharebs are cautioned that their compliance is controlled by the Settlement Agreement's terms, which require adherence to the plans prepared by Dedekian.  (Turner Decl, Ex. A, ¶ 7(c) [the Muharebs "will undertake all the modifications to the property as described in the report and plans dated December 16, 2002, prepared by expert George Dedekian"].)  In that light, his declaration herein should be of particular significance to the Muharebs as they complete the modifications to the Premises.

**2.   Attorney Fees**

Paragraph 10 of the Settlement Agreement states:

> [I]n the event that any action or proceeding is brought to enforce this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees and costs against the non-prevailing Party or Parties, in addition to all other relief to which that Party or those Parties may be entitled.

9

(Turner Decl., Ex. A, ¶ 10 at 4.)  For the reasons set forth above, Haney-Turner is the prevailing party on this motion seeking to enforce the terms of the Settlement Agreement, and thus it is entitled to its *reasonable* attorney fees and costs.[5] In total, Haney-Turner requests attorney fees in the amount of $7,316.47[6] ($1,789.47 for preparation of the motion and $5,527.00 for preparation of the reply) and $3,145.30 in costs associated with Dedekian's site survey report (Dedekian Decl., ¶ 3.)[7]

To determine reasonable attorney fees, the court must multiply "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The court finds the requested rates, of $225.00 for partners and $175.00 for associates, reasonable.  However, with respect to the number of hours expended, the court finds the amount of time spent on the reply unreasonable in some respects.  Id. at 434 (the district court must consider only those hours which are reasonably

---

[5] The Muharebs cross-moved for attorney fees incurred in opposing the motion; however, as the non-prevailing party, they are not entitled to an award of fees.  (Id.)

[6] Haney-Turner requested in its reply total fees in the amount of $7,666.47, which included $350.00 for two hours of expected work in traveling to and appearing at the hearing on the motion.  However, no hearing was held as the court submitted the matter on the briefs; accordingly, the court reduces the amount requested by $350.00.

[7] The court notes that the Muharebs did not challenge the requested fees and costs as unreasonable; rather, they simply contended Haney-Turner would not prevail on the motion and thus, would not be entitled to an award of fees at all.  As such, the court could award the requested amounts on the basis of the Muharebs' lack of opposition.  Nevertheless, the court has independently reviewed the reasonableness of the amounts requested.

10

1  expended, excluding any "excessive, redundant, or otherwise
2  unnecessary" hours).  In support of the reply, Haney-Turner filed
3  the declaration of Kimberly A. Steffenson of Rich, Ridge, Morris
4  & Iverson ("Rich Ridge"), who provided an itemized statement of
5  the work she and her firm performed at Haney-Turner's counsel of
6  record, Porter, Scott, Weiberg & Delehant's ("Porter Scott")
7  request.  (Steffenson Decl., filed Sept. 22, 2006.)  The total
8  amount of fees requested by Rich Ridge is $2,047.00.  (Id. at Ex.
9  A.)  Said work dated back to February 2006.  (Id.)

10       However, in its moving papers, filed by Porter Scott, Haney-
11 Turner did not request fees for Rich Ridge's work on the case.
12 In his reply declaration, counsel for Haney-Turner, Terence
13 Cassidy of Porter Scott, explained, *for the first time*, that the
14 legal services of Rich Ridge were "required" in preparation of
15 the "Motion and Reply brief."  (Cassidy Decl., filed Sept. 22,
16 2006, ¶ 5.)  "Specifically, the law office of [Rich Ridge] were
17 [sic] required to consult George Dedekian regarding modifications
18 per the Settlement Agreement, review pleadings, assist with the
19 declaration of Mark Turner and correspond with our office
20 regarding the eviction proceedings raised by the Muharebs in
21 their opposition."  (Id.)

22       If Rich Ridge's work on the case was necessary to the
23 motion, fees for their work should have been included in the
24 moving papers, not mentioned for the first time in the reply.
25 Moreover, it has not been clearly explained why Rich Ridge and
26 Ms. Steffenson were necessary to perform the above stated tasks.
27 It would appear Porter Scott could have performed these duties,
28 as it is counsel of record for Haney-Turner in this case, not

1  Rich Ridge.[8]  Additionally, the majority of Rich Ridge's work
2  appears to be duplicative of Porter Scott's work.  Ultimately, it
3  is Haney-Turner's burden to substantiate the reasonableness of
4  the fees requested, and with respect to the fees of Rich Ridge
5  the court finds that it has not done so.  Accordingly, the court
6  reduces the amount of fees requested by $2,047.00, and thus
7  awards Haney-Turner, $5,269.47.
8   As to Haney-Turner's request for costs, the Muharebs have
9  not challenged the reasonableness of the work performed by
10 Dedekian and the court finds his site survey necessary to the
11 motion, and thus awards costs of $3,145.30 for his work.

**CONCLUSION**

13  For the foregoing reasons, the court GRANTS Haney-Turner's
14 motion to enforce settlement agreement.  The Muharebs are
15 directed to complete the requisite modifications to the Premises
16 as set forth in the Settlement Agreement no later than 90 days
17 from the date of this order.  As the prevailing party on the
18 motion, the court awards Haney-Turner total attorney fees and
19 costs in the amount of $8,414.77.  Said monies shall be paid to
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///

---

[8] While it was not made clear from Haney-Turner's papers, it appears from the documents attached to the Request for Judicial Notice that Rich Ridge represented Haney-Turner in the unlawful detainer action.

12

Haney-Turner within 60 days of the date of this order.

IT IS SO ORDERED.

DATED: September 28, 2006

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE