UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MALCOLM HENSLEY, Guardian Ad Litem for JOSHUA HENSLEY,

        Plaintiff,

   v.

HANEY-TURNER, LLC, RUSS BROTHERS, INC., TAGHRID MUHAREB and SHAFIG MUHAREB, dba THE WAFFLE SHOP,

        Defendants.

NO. CIV. S-01-2212 FCD DAD

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on defendant Haney-Turner, LLC's ("Haney-Turner") motion for an order holding co-defendants Taghrid and Shafig Muhareb, dba The Waffle Shop (collectively, the "Muharebs") in contempt for failure to comply with the court's order of September 28, 2006 (the "Order").[1]  In said Order, the court granted Haney-Turner's motion to enforce the settlement agreement and release ("Settlement Agreement") entered

---

   [1]  Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

1

into by defendants with plaintiff Malcolm Hensley ("plaintiff"), which resolved[2] the instant action brought by plaintiff to remedy accessibility violations at the Muharebs' The Waffle Shop.[3]  The Muharebs were directed to complete the modifications to the subject premises as provided in the Settlement Agreement within ninety days of the date of the Order.

For the reasons set forth below, the court DENIES Haney-Turner's motion to hold the Muharebs in contempt.  The Muharebs made a good faith effort to comply with the court's Order, and while they did not complete the requisite work in a timely fashion, as of the date of this order, the vast majority of the required work is complete, and the Muharebs represent that the minimal work remaining will be completed shortly.  Under the circumstances, the court finds, in its discretion, that contempt sanctions are not warranted.

**BACKGROUND**

On December 3, 2001, plaintiff brought a claim under the Americans with Disabilities Act against defendants, alleging various accessibility violations at the Muharebs' The Waffle Shop, located in Yuba City, California.  The Muharebs leased the restaurant facility (sometimes herein, the "Premises") from

---

[2]   The parties entered the Settlement Agreement in May 2004, and on June 16, 2004, they filed a Stipulation for Dismissal (Docket #41).  Pursuant to said Stipulation, the court retained jurisdiction "over all disputes between (among) the parties arising out of the settlement agreement, . . . including enforcement of the terms of [the Agreement]."

[3]   As the prevailing party on the motion, the court awarded Haney-Turner $8,414.77 in attorney fees and costs.  Said monies have been paid by the Muharebs, and that portion of the court's Order is not at issue on this motion.

2

Haney-Turner. In May 2004, plaintiff entered the Settlement Agreement with defendants, pursuant to which defendants paid plaintiff $35,000.00 and the Muharebs agreed to perform certain modifications to the property. As to the required modifications, the Agreement provided:

> Defendants Taghrid and Shafig Muhareb, individually and dba The Waffle Shop will undertake all of the modifications to the property as described in the report and plans dated December 16, 2002, prepared by expert George Dedekian, with no cap on the amount of monies spent and with all modifications to be completed within six months of the date of the execution of this Agreement. Defendants Taghrid and Shafig Muhareb will obtain the appropriate building permits from the appropriate local authority within one week of the execution of this Agreement, and will commence work on the property within two weeks of the execution of this Agreement. Upon completion of the work by Defendants Taghrid and Shafig Muhareb, they will notify Mark Turner of Haney-Turner LLC, in writing, that the work has been completed, and Mr. Turner will be given the opportunity to inspect the property to confirm that the work has been completed as called out in the report and plans prepared by expert George Dedekian as referenced above.

(Order at 3.)

In opposition to the motion to enforce the Settlement Agreement, the Muharebs conceded they had not completed the required modifications. However, they argued their eviction from the Premises excused their further performance under the Agreement. The court rejected this argument, finding that the Settlement Agreement's terms did not condition the Muharebs' performance on their possession of the property and that the Muharebs' performance was not excused under the doctrine of frustration of purpose. (Order at 4-8.) As such, the court ordered the Muharebs to complete the remaining work as directed

3

by the Settlement Agreement,[4] with particular consideration of George Dedekian's ("Dedekian") declaration, filed in support of the motion to enforce settlement.  In that declaration, Dedekian described the remaining work, as of March 2006, which in his opinion had to "be completed and/or corrected . . . for the Property to be in compliance with the [original] Plans."  (Order at 9.)

    Haney-Turner now brings the instant motion seeking an order holding the Muharebs in contempt and ordering sanctions for the Muharebs' failure to comply with the court's directive to complete all necessary work by December 27, 2006.[5]  According to Haney-Turner, the repairs to the parking lot were completed late (on January 12, 2007), and the modifications to the handicap ramp, counter height, and bathrooms have not been completed as of the date of the filing of the motion (April 4, 2007).  Haney-Turner maintains that the work was not completed despite its full cooperation with the Muharebs and their contractors.  More specfically, Haney-Turner contends that the Muharebs have willfully (1) delayed obtaining the requisite permits for the work; (2) failed to provide the contractors with the essential repair information; (3) hired contractors who were not properly

---

[4] The Settlement Agreement directed that the Muharebs "will undertake all the modifications to the property as descried in the report and plans dated December 16, 2002, prepared by expert George Dedekian."  (Order at 9.)

[5] Haney-Turner seeks an award of $10,366.50 in sanctions, representing the amount of attorneys' fees it incurred in seeking to enforce the court's Order and in bringing the instant motion, as well as a "per diem sanction" of $25.00 a day from the December 27, 2006 deadline to the date of the filing of this motion.  (Def.'s Mem. of P&A, filed April 4, 2007, at 8-9 [providing summary of sanctions requested].)

4

1  licensed or insured; (4) failed to fulfill their payment
2  obligations to the contractors, thus further delaying the work;
3  and (5) sought access to the property unreasonably.  (See
4  generally Turner, Carrero, Cullen and Sewell Decls., filed April
5  4, 2007.)

6      The Muharebs respond that the delay in completion of the
7  work, following this court's Order, has been caused by Haney-
8  Turner's property manager, Mark Turner ("Turner") and the current
9  restaurant tenant's manager, Mike Carrero ("Carrero"), who have
10 inhibited the Muharebs' efforts to complete the repairs.
11 According to Muharebs, since receiving notice of the court's
12 Order, in early October 2006, they have diligently sought to
13 complete the requisite repairs, hiring qualified contractors who
14 followed Dedekian's plans and consulted him when needed regarding
15 the work.[6]  However, they assert that the work has been delayed
16 due to Turner's and Carrero's conduct.  In particular, Turner (1)
17 made it difficult for the Muharebs to gain access to the
18 Premises; (2) dissuaded contractors from agreeing to do the work
19 by misrepresenting the nature of the required work; (3) caused

20

21     [6]    The Muharebs maintain that with the exception of some
   delays in the work due to bad weather, their contractors
22 diligently worked to complete the repairs.  They specifically
   dispute that one of the contractor's employees, Greg Abrew
23 ("Abrew"), stated otherwise.  (Abrew Decl., filed May 8, 2007.)
   Abrew states in his declaration, filed in support of the
24 Muharebs' opposition, that, contrary to the waitresses'
   declarations submitted by Haney-Turner (Docket #s 66-7, 66-8), he
25 never said the Muharebs' contractor was taking as long as he
   could in order to take away business from the tenant.  (Abrew
26 Decl., ¶ 6.)  Abrew declared that it was the contractor's
   intention to "complete the job as soon as possible."  (Id.)
27 Indeed, the Muharebs note that their contractor at times worked
   during the evenings so that the restaurant tenant's business
28 would not be impacted.  (Mason Decl., filed May 8, 2007, ¶ 9.)

5

1  delays in the Muharebs' contractors obtaining permits for the
2  work; and (4) stopped work on the Premises for several days,
3  claiming to not have a copy of the Muharebs' contractor's
4  license, bond number and insurance information.  Carrero, the
5  Muharebs assert, (1) interrupted work on the Premises by
6  questioning the contractor's employees about the work; (2)
7  stopped work on the interior repairs, claiming incorrectly that a
8  permit did not cover the work; (3) caused a subcontractor to
9  decline the job because Carrero told the subcontractor that the
10 repairs were the subject of a pending lawsuit; and (4) told
11 another subcontractor's employee that the Muharebs would not pay
12 for the work and that the work was the subject of a lawsuit,
13 which caused the employee to the leave the Premises and not
14 complete the work that day.  (See generally Muhareb, Abrew and
15 Mason Decls., filed May 8, 2007.)

16     Despite this conduct by Turner and Carrero, the Muharebs
17 assert that, as of April 12, 2007, all required repairs have been
18 completed, and the City of Yuba approved the work.  (Mason Decl.,
19 ¶ 12; Muhareb Decl., Exs. Y, Z.)

20     In their reply, however, Haney-Turner proffered the
21 declaration of Paul Klein ("Klein"), Chief Building Official for
22 the City of Yuba (sometimes herein, the "City"), who attested
23 that the repairs at the Premises were not complete; in a letter
24 to the Muharebs' contractor, Eric Mason ("Mason") of Creative
25 Works, dated May 4, 2007, Klein explained that there were eleven
26 points of deficiencies/modifications per Dedekian's plans that
27 remained outstanding, including the required signage, ramp
28 handrail and curb modifications, and multiple items within the

restrooms.  Klein stated in his letter that the approval the Muharebs received on April 12, 2007 from his department "was inadvertently finaled," due to incorrect information on the permit records.  Klein explained that as a result of the misinformation, the entirety of the Premises had not been inspected on April 12, and after a full inspection on April 27, 2007, the aforementioned eleven items remained to be corrected in order to bring the Premises into compliance with the plans and the governing law.  Klein "apologize[d] for the inconvenience" caused by his department, and asked that the Muharebs contact the department to arrange for a final inspection upon completion of the remaining work.  (Klein Decl., filed May 18, 2007, Ex. A.)

Upon receipt of Klein's letter, the Muharebs contacted Mason regarding the items listed in the letter.  (Muhareb Sur-Reply Decl., filed May 29, 2007.)[7]  Neither the Muharebs nor Mason were present for the second inspection that took place on April 27. Mason met with Klein on May 21, 2007 to discuss the remaining work.  (Mason Sur-Reply Decl., filed May 29, 2007.)  On May 22, 2007, Mason began work on items one through six listed in Klein's letter regarding the ramp and parking lot.  These items were completed on the evening of May 24, 2007, and on May 25, 2007, Mason contacted Klein to arrange for inspection during the week of May 28.  (Id.)  Regarding the modifications to the restrooms, the Muharebs' prior contractor, Jerry Danielson ("Danielson"), who had performed repairs on the restrooms in 2005 and previously

---

[7] As Klein's letter was raised for the first time in Haney-Turner's reply, the court requested that the Muharebs respond to the letter in a sur-reply.  (Minute Orders, Docket #s 71, 72.)

7

received approval from the City of the work, met with Mike Campos, a senior inspector working under Klein, to discuss items seven through eleven. Danielson attests that provided access to the property is timely received, these items will be completed by June 6, 2007, thus concluding the entirety of the required work. (Supp. Danielson Decl., filed May 29, 2007.)

## STANDARD

The court may assess attorney fees or other sanctions under its inherent power for the "willful disobedience of a court order." Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991). The decision to do so rests entirely in the court's discretion. Air Separation, Inc. v. Underwriters at Lloyds of London, 45 F.3d 288, 291 (9th Cir. 1991) (recognizing that the court has discretion whether to impose sanctions for violations of its orders).

Here, Haney-Turner specifically seeks relief, not pursuant to the court's inherent power, but under the rules governing civil contempt. Unlike criminal contempt proceedings, civil contempt seeks to coerce compliance, not to punish disobedience. Where the contempt consists of failure to perform an act within the contemnor's power to perform, he may be fined or imprisoned until he agrees to comply with the order. The contemnor may also be required to pay damages to the moving party for injury suffered as a result of the violation. General Signal Corp. V. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986); American Airlines, Inc. v. Allied Pilots Ass'n, 228 F.3d 574, 584 (5th Cir. 2000) (compensatory sanctions "merely imitate the relief that would be provided in a damages action"). Monetary sanctions

1   may also be imposed to coerce future compliance.  Such coercive
2   sanctions need not be matched to any actual loss suffered by the
3   plaintiff.  <u>Glover v. Johnson</u>, 199 F.3d 310, 313 (6th Cir. 1999).
4   Where a fine is coercive, not compensatory, the monies are
5   payable to the court, not the opposing party.  <u>General Signal</u>,
6   787 F.2d at 1380.
7        The factors to be considered by the court in imposing a
8   civil contempt sanction include: (1) the harm from noncompliance;
9   (2) the probable effectiveness of the sanction; (3) the
10  contemnor's financial resources and the burden the sanctions may
11  impose; and (4) the contemnor's willfulness in disregarding the
12  court's order.  <u>United States v. United Mine Workers of America</u>,
13  330 U.S. 258, 303-04 (1947); <u>General Signal Corp.</u>, 787 F.2d at
14  1380.
15       The party alleging civil contempt must demonstrate the
16  alleged contemnor violated the court's order by "clear and
17  convincing evidence," not merely a preponderance of the evidence.
18  <u>Dual-Deck Video Cassette Recorder Antitrust Litigation v. Motion
19  Picture Ass'n of America</u>, 10 F.3d 693, 695 (9th Cir. 1993).  To
20  be sanctionable, the contempt "'need not be willful,' and there
21  is no good faith exception to the requirement of obedience to a
22  court order."  <u>Id.</u> (citation omitted).  However, substantial
23  compliance with the court order is a defense to civil contempt,
24  and it "is not vitiated by 'a few technical violations' where
25  every reasonable effort has been made to comply."  <u>Id.</u> (citation
26  omitted).

**ANALYSIS**

The parties vigorously dispute the reasons why the subject work on the Premises was not completed by the Muharebs by the deadline set forth in the court's Order.[8] However, absent an evidentiary hearing to assess the relevant declarants' credibility, the court cannot determine whose version of the facts is correct. Nevertheless, the court can resolve the instant motion on the papers submitted because when reviewed in their entirety, they demonstrate, at a minimum, that the Muharebs made and continue to make a good faith effort to comply with the court's Order. Under the circumstances, the court finds, in its discretion, that contempt sanctions are not merited.

Since the issuance of the court's Order, the Muharebs have *consistently* moved toward completion of the necessary work. While the work was not timely completed, the court emphasizes that at *no* time, since the issuance of the court's Order, have the Muharebs refused to perform the work in any respect or failed to, at least, try to complete the work in a timely fashion. United Mine Workers of America, 330 U.S. at 303-04 (recognizing that an important factor in considering imposition of contempt sanctions is the contemnor's "willfulness" in disobeying the court's order); General Signal Corp., 787 F.2d at 1380 (accord). Indeed, as of April 12, 2007, the Muharebs reasonably believed based on the City's approval that all necessary work was

---

[8] Haney-Turner's objections (Docket #70) to the Muharebs' declarations filed in support of their opposition are OVERRULED. In the context of the instant motion, the court properly considers all evidence submitted by the parties. Moreover, for the reasons set forth below, the court need not resolve the parties' various factual disputes to resolve the motion.

10

1  completed.  Klein acknowledged in his May 4, 2007 letter that the
2  City's original inspector "signed off" on the permits, approving
3  the work and closing the file.  As such, the Muharebs
4  appropriately relied on the City's approval in filing their
5  opposition.

6  The Muharebs did not become aware of any outstanding issues
7  with the work until they received Klein's letter on May 4
8  (neither the Muharebs nor their contractors were present at the
9  latter April 27 inspection of the property).  Immediately upon
10 receipt of the letter, the Muharebs had their contractors meet
11 with Klein or his staff to remedy the outstanding issues; the
12 Muharebs did not challenge the latter findings of the City,
13 despite the prior approvals given by it (both recently on April
14 12, 2007 and previously in 2005 with respect to Danielson's work
15 on the restrooms), and have worked diligently to complete all
16 work as outlined by Klein in his letter.  Klein has acknowledged
17 the Muharebs' and their contractors' cooperation and diligent
18 efforts to complete the remaining work.  (Govindarao Decl., filed
19 May 29, 2007, ¶ 3-4.)

20 Substantial compliance is a defense to civil contempt, and
21 the court properly considers the Muharebs' good faith efforts to
22 comply with the court's Order.  Dual-Deck Video, 10 F.3d at 695.
23 Therefore, based on these efforts, the court denies the instant
24 motion.

25 However, in accordance with the Muharebs' representations in
26 their papers, the court directs that the remaining work to the

1  restrooms be completed by June 18, 2007.[9]  Haney-Turner shall
2  cooperate with the Muharebs to facilitate prompt access to the
3  Premises.  Should the Muharebs be unable to complete the work by
4  June 18, they shall inform the court of the reasons therefor and
5  move the court for an extension of the deadline.  The Muharebs
6  are further directed to facilitate a final inspection of the
7  property by Klein or his staff by July 6, 2007.  Should the City
8  be unable to perform such inspection before said date, the
9  Muharebs shall move the court for an extension of that deadline.
10 Upon completion of the inspection and receipt of final approval
11 from the City, the Muharebs shall file with the court and serve
12 Haney-Turner within ten days of said approval, a declaration
13 attesting to receipt of the final approval and completion of all
14 required modifications.
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///

---

[9] The Muharebs and Danielson represented that the work to the restrooms would be completed by June 6, 2007.  However, the court extends that deadline after consideration of the Supplemental Declaration of Mark Turner, filed June 4, 2007 (Docket #75).  Based on said declaration, it appears Danielson is currently in the process of reactivating his contractor's license.  The court extends the deadline in order to allow Danielson sufficient time to provide Haney-Turner with proof of his renewed license and any other applicable information and to thereafter perform the required work.  Contrary to Haney-Turner's suggestion, the court does not find Danielson's prior inactive status grounds to grant its motion; Danielson has sought to reactivate his license and has paid the applicable fees to do so.

**CONCLUSION**

For the foregoing reasons, Haney-Turner's motion for contempt of court order is DENIED.  The Muharebs are nonetheless ordered to comply with the above directions with respect to completion of the remaining work on the Premises.

IT IS SO ORDERED.

DATED: June 4, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE